STATE OF MINNESOTA

IN SUPREME COURT

A24-1535

Court of Appeals                                                      Procaccini, J.


Seven Acquisition LLC,

             Appellant,

vs.                                                          Filed: August 5, 2026
                                                     Office of Appellate Courts
Gregg Williams,

             Respondent.

_____


Andrew L. Marshall, James C. Kovacs, Bryce D. Riddle, Bassford Remele, P.A.,
Minneapolis, Minnesota, for appellant.

Jason R. Asmus, Scott M. Flaherty, Yuka Shiotani, Taft Stettinius & Hollister LLP,
Minneapolis, Minnesota, for respondent.

_____

S Y L L A B U S

Quasi-judicial immunity applies to acts within the scope of a court-appointed

receiver's appointment, even when the receiver is alleged to have acted at the direction of

a party and with an improper motive.

Affirmed.


1

O P I N I O N

PROCACCINI, Justice.

The doctrine of quasi-judicial immunity generally protects a court-appointed receiver from lawsuits based on actions taken by the receiver within the scope of the receivership. In this case, we review the application of quasi-judicial immunity to allegations that a receiver committed misconduct by acting at the direction of a party and with an improper motive.

At the outset of foreclosure proceedings involving a property in downtown Minneapolis, appellant Seven Acquisition LLC (Seven) was the property's tenant, and respondent Gregg Williams was the court-appointed receiver over the property. After an unsuccessful attempt to remove Williams from the receivership in the foreclosure proceedings, Seven sued Williams directly, alleging two claims: negligence and breach of fiduciary duty. The district court dismissed the negligence claim based on quasi-judicial immunity, but it did not dismiss the claim for breach of fiduciary duty.

Williams appealed. The court of appeals reversed the district court's decision not to dismiss the breach-of-fiduciary-duty claim, concluding that all the allegations related to that count stemmed from actions that Williams took within the scope of the receivership. Because quasi-judicial immunity protects quasi-judicial officers from suit for all actions taken within the scope of their appointment regardless of motive, and the allegations in Seven's complaint allege either improper motives or actions taken within the scope of the receivership, we affirm the decision of the court of appeals.

**FACTS**

Because this appeal arises from the denial of Williams's motion to dismiss, the facts presented here are as alleged in Seven's complaint and in documents referenced in the complaint. *See Hoskin v. Krsnak*, 25 N.W.3d 398, 401 (Minn. 2025). We accept the allegations as true, and we construe reasonable inferences in Seven's favor. *Id.* As the court of appeals observed, these alleged facts "have not been tested by a trial or other fact-finding inquiry." *See Seven Acquisition LLC v. Williams*, 25 N.W.3d 412, 414 (Minn. App. 2025).

Seven was a commercial tenant maintaining a restaurant, event center, and nightclub business in a building in downtown Minneapolis. 700 Hennepin Holdings LLC (700 Hennepin) was Seven's landlord. The building was encumbered by a mortgage held by Wilmington Trust, National Association (Wilmington Trust). 700 Hennepin was the mortgagor. Midland Loan Services, a division of PNC Bank, was a special servicer for Wilmington Trust. The parties at times refer to the mortgagee as "Wilmington," "Midland," or "Wilmington/Midland." The identity of the mortgagee is not at issue in this appeal, and we refer to the mortgagee as "the bank" or "Midland."

Between 2018 and 2019, the building's roof began to leak. The leaks damaged the building's floors, walls, and ceiling. Seven reported the leaks to 700 Hennepin, but 700 Hennepin did not repair the roof. In response, Seven withheld rent. 700 Hennepin then filed an eviction action against Seven. Seven and 700 Hennepin arbitrated their dispute, and Seven won an arbitration award of approximately $800,000 against

700 Hennepin. After the arbitration award was issued, 700 Hennepin stopped making mortgage payments to the bank.

Based on 700 Hennepin's failure to repay the loan on the mortgage, the bank sued 700 Hennepin to collect the balance on the loan and take possession of the property. Relevant here, the bank's complaint requested the appointment of Gregg Williams as receiver over the property. The day after the bank filed its complaint against 700 Hennepin, the bank and 700 Hennepin filed a stipulation for entry of an order appointing Williams as receiver.

To be eligible to serve as a receiver, a receiver must be "independent as to the parties and the underlying dispute." Minn. Stat. § 576.26, subd. 1(2). In their stipulation, the bank and Williams attested that Williams was sufficiently independent to serve as a receiver, that the only relationship Williams had with the bank was "in the context of discussions regarding the proposed receivership," and that Williams did "not have any material financial or pecuniary interest in the outcome of the underlying dispute between the parties." Seven's complaint in this matter alleges, however, that at the time of his appointment, Williams "had a significant business relationship with Wilmington Trust's agent, Midland, having received more than 50% of his business over the preceding 15 years from Midland."

The same day that the bank and 700 Hennepin filed their stipulation, the district court appointed Williams as receiver. The receivership order made findings of fact and granted Williams several powers. Based on the information the bank and Williams provided, the district court found that Williams was sufficiently independent to be named

4

as the receiver because the "only relationship that Mr. Williams [had] with the parties to [the] action [was] in the context of discussions regarding the proposed receivership sought in the Complaint," that Williams did "not have any material financial or pecuniary interest in the outcome of the underlying dispute between the parties," and that Williams did "not have any interest materially adverse to the interests of the parties to [the] action." The district court found Williams qualified to serve as the receiver and "as an officer of the Court." Most relevant here, the receivership order granted Williams the power to "collect, control, manage, conserve, and protect the Receivership Property" and the power to "oversee all collection of rents and cash flow" and "enforce any valid term, condition, or covenant of any existing lease."

Williams took over the day-to-day operations of the property. Seven alerted Williams to the leaking roof, and Williams acknowledged the damage. But Williams refused to repair the roof and informed Seven that he would not do so until Seven vacated the property. Seven alerted Williams about a number of other necessary repairs, but Williams either delayed the repairs or failed to make them. Due to the lack of maintenance, the building deteriorated, and Seven had to close its business and vacate the building. Based on the outstanding arbitration award that Seven had won against 700 Hennepin, Seven continued not to pay rent.

About five months after the district court issued the receivership order, the bank amended its complaint against 700 Hennepin to add Seven as a party and include a count commencing a foreclosure action. In the foreclosure action, Williams moved to compel Seven to pay rent, arguing that Seven owed Williams rent and that Seven was in default

of its lease for failure to pay. Eventually, this court held that Seven and Williams needed to submit the rent dispute to arbitration, *see Wilmington Tr., Nat'l Ass'n v. 700 Hennepin Holdings, LLC*, 988 N.W.2d 895, 909 (Minn. 2023), but—according to Seven's complaint—there was never a determination that Seven owed rent or was in default of its lease.

More than two years after Seven was named and served in the foreclosure action, Seven moved to remove Williams from the receivership. Seven argued that Williams failed to file a bond as required by Minnesota Statutes section 576.27, he was not independent from the parties to the underlying dispute, and he failed to execute his duties when he declined to make necessary repairs. The district court denied Seven's motion to remove Williams from the receivership because Seven's motion was untimely and also because Seven had not demonstrated good cause to remove Williams under Minnesota Statutes section 576.37.[1]

Seven then sued Williams directly, asserting claims for negligence and breach of fiduciary duty. In support of its negligence claim, Seven alleged that Williams failed to exercise reasonable care in maintaining the property. As to its claim for breach of fiduciary duty, Seven alleged that Williams owed a duty to Seven based on his position as receiver. Seven alleged that Williams breached that duty because he had a conflict of interest arising from his duties under the receivership order and duties imposed on him by

---

[1]     Minnesota Statutes section 576.37, subdivision 1, allows a court to remove a receiver if "(1) the receiver fails to execute and file the bond required by section 576.27; (2) the receiver resigns, refuses, or fails to serve for any reason; or (3) for other good cause."

the bank, he took direction from the bank, and he intentionally acted to damage Seven for the bank's benefit. Seven alleged that Williams's actions were outside the scope of his receivership authority.

Williams moved to dismiss Seven's complaint for failure to state a claim upon which relief can be granted. *See* Minn. R. Civ. P. 12.02(e). Relevant here, he asserted that he was entitled to quasi-judicial immunity, a doctrine that protects receivers and other quasi-judicial officers from lawsuits for conduct within the scope of their appointment. Williams argued that this immunity barred both of Seven's claims because the alleged wrongdoing was within the scope of his appointment. The district court dismissed Seven's negligence claim on this basis. But it determined that there were fact questions as to whether Williams had a conflict of interest with, or was taking direction from, the bank. For that reason, the district court did not dismiss the claim for breach of fiduciary duty.

Williams appealed the district court's decision not to dismiss the breach-of-fiduciary-duty claim.[2] Seven did not cross-appeal the dismissal of the negligence claim. At the court of appeals, Williams again argued that quasi-judicial immunity barred Seven's breach-of-fiduciary-duty claim. The court of appeals recognized—and the parties did not dispute—that "Williams may invoke quasi-judicial immunity in the appropriate situation." *Seven Acquisition*, 25 N.W.3d at 416–17. The

---

[2]    In interpreting Minnesota Rule of Civil Appellate Procedure 103.03, we have held that an order denying a dispositive motion on the ground of immunity from suit is immediately appealable. *Anderson v. City of Hopkins*, 393 N.W.2d 363, 363–64 (Minn. 1986).

7

court of appeals then turned to the "question [of] whether this is such a situation." *Id.* at 417. In concluding that quasi-judicial immunity applied here, the court of appeals determined that all of Williams's alleged breaches of fiduciary duty arose from actions he undertook within the scope of his appointment. The court of appeals further reasoned that the allegation that Williams acted at the bank's direction could establish only that Williams acted with an improper motive, which was insufficient to defeat quasi-judicial immunity. *Id.* at 417–20.

Seven filed a petition for further review, which we granted.

## ANALYSIS

This case turns on the scope of the doctrine of quasi-judicial immunity and, in particular, whether it encompasses Williams's alleged conduct. We begin by explaining the doctrine of quasi-judicial immunity as it applies to court-appointed receivers. We then address the application of the doctrine in the context of Williams's motion to dismiss, analyzing whether the doctrine shields Williams from Seven's breach-of-fiduciary-duty claim.

### A.

Quasi-judicial immunity is a long-recognized extension of judicial immunity, which prevents judges from being held liable in civil lawsuits based on actions taken in their judicial capacity. *Linder v. Foster*, 295 N.W. 299, 300–01 (Minn. 1940) (compiling authorities). Judicial immunity protects the judiciary's independence by recognizing and addressing the commonsense reality that a defeated litigant "may not only think himself wronged, but may attribute wrong motives to the judge whom he holds responsible for

8

his defeat." *Id.* at 301. This protection "is not extended to the judge for his own sake, but because the public interest requires full independence of action and decision on his part, uninfluenced by any fear or apprehension of consequences personal to" the judge. *Robinette v. Price*, 8 N.W.2d 800, 807 (Minn. 1943) (quoting *Stewart v. Case*, 54 N.W. 938, 938 (Minn. 1893)). Accordingly, judicial immunity generally protects judges from being sued on the grounds that "the judge's acts were the result of partiality, or malice, or corruption." *Linder*, 295 N.W. at 301; *see also Brown v. Dayton Hudson Corp.*, 314 N.W.2d 210, 214 (Minn. 1981) (explaining that judicial officers are absolutely immune "regardless of motive").

We have extended this protection to quasi-judicial officers through the doctrine of quasi-judicial immunity, which similarly protects quasi-judicial officers from lawsuits based on acts performed in their quasi-judicial capacity. *See Brown*, 314 N.W.2d at 214. Like judicial officers, quasi-judicial officers cannot be sued based on their actions as a quasi-judicial officer "by merely pleading that [their actions] were the result of a conspiracy previously entered into." *Linder*, 295 N.W. at 301–02. In short, quasi-judicial immunity protects quasi-judicial officers from lawsuits based on actions taken within their quasi-judicial capacity or based on general allegations of conspiracy related to their quasi-judicial role.

And, for more than a century, we have recognized that quasi-judicial immunity applies to court-appointed receivers when they are acting within the scope of the receivership. *See Schmidt v. Gayner*, 62 N.W. 265, 265 (Minn. 1895). A court-appointed receiver acts as the court's agent, taking possession of and managing receivership

9

property, subject to the court's direction. *Aaron Carlson Corp. v. Cohen*, 933 N.W.2d 63, 67–68 (Minn. 2019). A receiver's duties are determined by statute, rule, or court order, including the order appointing the receiver. *Id.* at 68. Minnesota Statutes chapter 576 governs receiverships and sets forth receivers' basic powers and duties. *See* Minn. Stat. §§ 576.21–.53. Chapter 576 also provides that a receiver "shall be entitled to all defenses and immunities provided at common law for acts or omissions within the scope of the receiver's appointment." Minn. Stat. § 576.28(a).

Taken together, our case law makes clear that when a receiver acts pursuant to a receivership order or chapter 576, the receiver is acting within the scope of the receivership and will be protected from suit for those actions, regardless of alleged motive. And like other quasi-judicial officers, a receiver is protected from claims based solely on allegations that the receiver was acting as part of a conspiracy.

B.

Williams moved to dismiss Seven's complaint on the grounds that the actions alleged were all taken within the scope of the receivership, and therefore, Seven failed to state a claim upon which relief can be granted. *See* Minn. R. Civ. P. 12.02(e). Because we are analyzing this issue in the context of a motion to dismiss, we next examine Seven's burden to state a claim under Minnesota's notice-pleading standard. We then examine whether Seven's complaint must be dismissed based on quasi-judicial immunity.

1.

We review whether a complaint has sufficiently stated a claim de novo. *Hansen v. U.S. Bank, Nat'l Ass'n*, 934 N.W.2d 319, 325 (Minn. 2019). A complaint states a claim if

10

it is possible, on any evidence that might be produced consistent with the pleader's theory, to grant the relief demanded. *Walsh v. U.S. Bank, N.A.*, 851 N.W.2d 598, 603 (Minn. 2014). Under Minnesota's notice-pleading standard, a plaintiff may rely on general and conclusory statements of *fact*. *Id.* at 604–05. But conclusory statements of *law* are not afforded deference. *Id.* at 603 (noting with approval "the common-sense proposition that we are not bound by legal conclusions stated in a complaint when determining whether the complaint survives a motion to dismiss for failure to state a claim." (citation omitted) (internal quotation marks omitted)); *see also id.* at 607 n.3 ("[W]hen determining whether a complaint survives a motion to dismiss for failure to state a claim, we are not bound by the legal conclusions pleaded ….").

Seven's complaint alleges that "[t]he actions taken by [Williams] were outside the scope of the Receiver's authority." Seven contends that, under Minnesota's notice-pleading standard, this allegation *alone* is sufficient to survive a motion to dismiss based upon quasi-judicial immunity, because quasi-judicial immunity protects a receiver from suit only for actions taken within the scope of the receivership. But whether Williams's alleged actions were within the scope of the receivership is, as Seven conceded at oral argument, a conclusion of *law*. *See Aaron Carlson Corp.*, 933 N.W.2d at 67 (reviewing, as a question of law, whether bringing a veil-piercing claim was within the scope of a receivership); *cf. Reetz v. City of Saint Paul*, 956 N.W.2d 238, 243 (Minn. 2021) (reviewing, as a question of law, whether an act was quasi-judicial).

Because the allegation that Williams acted outside the scope of the receivership is a conclusion of law to which we are not bound, that allegation alone is insufficient to

11

survive Williams's motion to dismiss. *See Walsh*, 851 N.W.2d at 603, 607 n.3. Instead, to survive the motion to dismiss, the complaint must plead *facts* that support the legal conclusion that Williams's conduct strayed beyond the scope of the receivership.[3] *See id.* at 604–05; *see also Finn v. All. Bank*, 860 N.W.2d 638, 654 (Minn. 2015) (affirming dismissal of a claim because the complaint pled "nothing more than a legal presumption" that was not an accurate statement of law and there were "no other allegations from which a factfinder could draw a reasonable inference" that an element of the claim could be established). Although such factual allegations can be broad and general—and we must draw reasonable inferences from those allegations in Seven's favor—if the complaint fails to allege facts that support a conclusion that Williams acted outside the scope of the receivership, then quasi-judicial immunity applies, and Seven has not stated a claim upon which relief can be granted.[4]

---

[3]     Seven appears to argue that our decision in *Demskie v. U.S. Bank, National Association*, 7 N.W.3d 382 (Minn. 2024), allows it to rely on its complaint's conclusion of law that Williams exceeded the scope of the receivership. In *Demskie*, we concluded that a plaintiff had—at the judgment on the pleadings stage—alleged facts sufficient to satisfy the legal conclusion that a defendant was a "shareholder" under the relevant statute. *Id.* at 387–88. But, as we observed in *Demskie*, the complaint in that case alleged *facts* that supported the party's shareholder status. *See id.* (noting that the plaintiff's allegation that the defendant was a shareholder was not a "mere label" because the complaint included "numerous facts supporting the allegation that [the defendant] became the controlling shareholder"). Although *Demskie* reaffirmed that we do not require exacting specificity in our pleading standard, it does not support the contention that a plaintiff need not allege any facts to support a conclusion of law in their complaint.

[4]     Williams suggests that our analysis should be guided by *Hoskin v. Krsnak*, a case in which we held that a motion to dismiss based on an affirmative defense may be granted only if the allegations in the complaint, construed in the plaintiff's favor, establish an unrebuttable defense. 25 N.W.3d 398, 409 (Minn. 2025). *Hoskin* involved an affirmative defense, not an immunity, and "[w]e treat affirmative defenses differently

2.

Under the standard discussed above, we analyze whether Seven has pled any factual allegations—aside from general allegations of conspiracy of the type that we addressed in *Linder*—that support a legal conclusion that Williams acted outside the scope of the receivership.

To answer this question, we begin by defining the scope of the receivership at issue. As discussed above, the scope of a receivership is set by statute, rule, or order of the court, including the court order appointing the receiver. *See Aaron Carlson Corp.*, 933 N.W.2d at 68. Minnesota Statutes section 576.29, subdivision 1, lists several powers and duties of a receiver, including "the power to collect, control, manage, conserve, and protect receivership property" and "the power to assert rights, claims, causes of action, or defenses that relate to receivership property." Minn. Stat. § 576.29, subd. 1(a)(1), (3). In addition, the receivership order here granted Williams "[t]he power to oversee all collection of rents and cash flow" and "[t]he power to enforce any valid term, condition, or covenant of any existing lease." Accordingly, actions that Williams took to manage the

---

from immunities because they serve different purposes." *Rehn v. Fischley*, 557 N.W.2d 328, 332 (Minn. 1997). Most relevant here, "an affirmative defense protects a party from *liability*," but "an immunity typically protects a party from *suit*." *Id.* at 332–33. And "the application of an immunity typically is a matter of law that is best resolved before the parties engage in lengthy discovery." *Id.* at 332. Given the distinctions that we have drawn between affirmative defenses and immunities, it is unclear whether the standard articulated in *Hoskin* applies to an assertion of immunity. Nevertheless—because we conclude that the allegations in Seven's complaint, construed in its favor, establish that Williams is protected by quasi-judicial immunity—Seven has not stated a claim even under *Hoskin*'s lenient standard. For that reason, we need not decide whether the *Hoskin* standard applies to a motion to dismiss based on an immunity.

property, assert claims on behalf of the property, enforce a lease, or collect rent were within the scope of the receivership.

Seven argues that the factual allegations in its complaint show that Williams was acting outside the scope of the receivership because the allegations show that Williams was acting as an agent of one of the parties (the bank). Seven points to its allegations that Williams failed to make repairs to the building so that Seven would be forced to vacate the property, and that Williams made misrepresentations to the district court when seeking the receivership appointment and during the rent dispute with Seven. Seven also points to its allegations that Williams took direction from the bank, that Williams's extensive prior business relationships with the bank posed a conflict of interest with his duties as receiver, and that Williams was participating in a plan with the bank to oust Seven from the property. We examine whether each of these allegations, as well as the complaint as a whole, support a reasonable inference that Williams acted outside the scope of the receivership.

Starting with Williams's alleged failure to repair the building and the actions he took to collect rent from Seven, we agree with the court of appeals that these acts fell within the scope of the receivership. Williams's decisions regarding repairs fell within his authority and discretion to control, manage, and operate the property. *See* Minn. Stat. § 576.29, subd. 1(a)(1). And Williams's actions in the rent dispute were also within the scope of section 576.29 and the receivership order, which authorized Williams to both assert claims relating to the property and enforce existing leases. Pursuing an action to

14

collect rent—even if ultimately unsuccessful—was within Williams's power to enforce leases and to assert claims related to the property.

Seven argues that these actions were nonetheless outside the scope of the receivership because Williams was not exercising his discretion as receiver but was instead taking these actions as the bank's agent. Here, Seven's arguments that Williams acted as the bank's agent boil down to arguments that Williams acted with an improper motive. But quasi-judicial immunity protects actions falling within the scope of the receivership "regardless of motive." *Brown*, 314 N.W.2d at 214. Williams is therefore entitled to quasi-judicial immunity from Seven's allegations relating to the failure to repair the property and the rent dispute.

Seven's other allegations fail to defeat quasi-judicial immunity because they amount to general allegations of conspiracy like those addressed in *Linder*. In *Linder*, the plaintiff's allegations involved an alleged plot between court-appointed physicians and the court commissioner to find the plaintiff mentally ill in a civil commitment proceeding. *See* 295 N.W. at 300. We reasoned that quasi-judicial immunity should not be circumvented by a plaintiff's pleading that the acts in question were "the result of a conspiracy." *Id.* at 302. We observed that allowing general conspiracy allegations to defeat a claim of quasi-judicial immunity would "scuttle the immunity rule." *Id.* Here, Seven alleges that Williams was motivated by a conflict of interest, took direction from the bank, and participated in a plan with the bank to oust Seven from the property. Although these allegations are somewhat more detailed than the allegations of the plaintiff in *Linder*, they nonetheless amount to allegations of a conspiracy of the type

15

addressed in that case. *See Linder*, 295 N.W. at 302; *see also Conspiracy*, *Black's Law Dictionary* (12th ed. 2024) (defining "conspiracy" as "[a]n agreement by two or more persons to commit an unlawful act" and noting that it is derived from a Latin word that means to "plot together"). Under *Linder*, Seven's general conspiracy allegations regarding Williams's plan with the bank to oust Seven cannot defeat Williams's claim of quasi-judicial immunity.[5]

We must also address Seven's troubling allegation that Williams made misrepresentations to the district court to be appointed as receiver. We have declined to apply quasi-judicial immunity to protect attorneys and arbitrators from liability for fraud. *See Hoppe v. Klapperich*, 28 N.W.2d 780, 791 (Minn. 1947) (noting that an attorney forfeits quasi-judicial immunity if the attorney "permits the private interests and desires of his client to become so dominant that he ceases to be a minister of justice and instead

---

[5] Seven also argues that cases from other states support the conclusion that Williams's attempt to oust Seven was outside the scope of the receivership. Seven relies heavily on *Anes v. Crown Partnership, Inc.*, a case in which the Nevada Supreme Court held that a receiver acted outside the scope of the receivership when the receiver harassed a tenant of the receivership property. 932 P.2d 1067, 1071 (Nev. 1997). But *Anes* is distinguishable. In *Anes*, the district court was asked to determine whether the receiver had harassed the tenant and to enjoin future harassment. *See id.* Seven, on the other hand, did not allege harassment in its complaint or ask the district court to determine whether it was being harassed. Seven's complaint instead relies on a theory that Williams was conspiring with the bank, asserting that Williams acted at the bank's direction to oust Seven from the property. Accordingly, we do not find *Anes* persuasive here.

Seven's reliance on *Kohlrautz v. Oilmen Participation Corp.*, 441 F.3d 827 (9th Cir. 2006), is similarly unpersuasive. In *Kohlrautz*, the Ninth Circuit interpreted Nevada law and declined to apply quasi-judicial immunity to a receiver because the receiver acted partially toward one party in the litigation and made misrepresentations to the district court. 441 F.3d at 836. Because this approach is inconsistent with our reasoning in *Linder*, which protects quasi-judicial officers from liability based on allegations of partiality, we decline to follow *Kohlrautz*. *See Linder*, 295 N.W. at 300–02.

16

knowingly becomes an instrumentality for the perpetration of fraud"); *L & H Airco, Inc. v. Rapistan Corp.*, 446 N.W.2d 372, 377 (Minn. 1989) (declining to apply arbitral immunity to protect an arbitrator from criminal liability for fraud). Although Seven alleges that Williams made misrepresentations before the district court, Seven neither asserted a fraud claim in its complaint nor pursued a fraud exception to the quasi-judicial immunity doctrine before this court or the court of appeals. Nor did Seven's complaint contend that Williams should lose quasi-judicial immunity because the alleged misrepresentations rendered the receivership itself invalid. Unlike *L & H Airco*, 446 N.W.2d at 375, which involved a fraud lawsuit, or *Hoppe*, 28 N.W.2d at 791, which considered a circumstance in which an attorney "knowingly [became] an instrumentality for the perpetration of fraud," Seven does not allege that Williams and Midland committed fraud. Instead, Seven alleges that Williams made misrepresentations to the district court as part of the bank's plan to oust Seven from the property, which was a breach of his fiduciary duty to Seven. As discussed above, the allegations that Williams participated in a plan to harm Seven are conspiracy allegations that, under *Linder*, do not defeat quasi-judicial immunity.

Moreover, it is not clear that Williams's alleged misrepresentations to the district court support Seven's claim for breach of fiduciary duty. Such misrepresentations would arguably breach a duty to *the court*. *Cf. In re Houge*, 764 N.W.2d 328, 335 (Minn. 2009) (describing the contents of an affidavit as amounting to "an affirmative misrepresentation in violation of [the attorney]'s duty of candor to the tribunal"). But even if Williams owed a fiduciary duty to *Seven* related to his representations to the court, it is unclear how that

17

duty could have arisen before Williams was appointed as receiver.[6] *See Midland Nat'l*

*Bank of Minneapolis v. Perranoski*, 299 N.W.2d 404, 413 (Minn. 1980) (noting that no

fiduciary duty existed between parties to a transaction who did not have a fiduciary

relationship). Pre-appointment misrepresentations, therefore, would not support a

breach-of-fiduciary-duty claim. We therefore reject Seven's argument that Williams's

alleged pre-appointment misrepresentations to the district court prevent the application of

quasi-judicial immunity as to Seven's fiduciary duty claim.

We are mindful that our notice-pleading standard is a low one and that reasonable

inferences must be drawn in favor of Seven. But to succeed here—that is, to avoid the

application of quasi-judicial immunity—Seven must show that its allegations give rise to

a reasonable inference that Williams acted outside of the scope of the receivership. When

viewed in their totality, the allegations in Seven's complaint portray a series of acts that

were taken *within* the scope of the receivership, and which may well support an inference

of improper motive. But such allegations do not support an inference that Williams acted

outside of the scope of the receivership, and an inference of improper motive does not

defeat the protections of quasi-judicial immunity.[7]

---

[6] Whether Williams owed a duty to Seven based on his quasi-judicial role as receiver is not at issue before us. We assume without deciding that Williams owed such a duty to Seven for the purpose of this analysis only.

[7] In other words, Seven has pled itself out of court by admitting "all the ingredients of" quasi-judicial immunity. *Hoskin*, 25 N.W.3d at 408. The allegations in Seven's complaint establish quasi-judicial immunity by making clear that Williams was a receiver and that Williams acted within the scope of the receivership. *See id.* at 409 (discussing motion to dismiss standard); *Brown*, 314 N.W.2d at 214 (describing requirements of quasi-judicial immunity). As discussed above, although we conclude that Seven's

18

We also take seriously Seven's argument that applying quasi-judicial immunity here could allow corrupt receivers to engage in misconduct without adequate accountability. But just as lawsuits brought by defeated parties against judges jeopardize judicial independence, so too do lawsuits against quasi-judicial officers when those officers exercise their powers contrary to the suing party's wishes. *See Linder*, 295 N.W. at 301 ("A defeated party to a litigation may not only think himself wronged, but may attribute wrong motives to the judge whom he holds responsible for his defeat."). And jeopardizing judicial independence is against the interests of the public. The public is served when receivers have "full independence of action and decision" and are "uninfluenced by any fear or apprehension of consequences personal" to themselves. *See Robinette*, 8 N.W.2d at 807.

We emphasize that corrupt receivers are not left unchecked and that chapter 576 does not leave aggrieved parties without recourse. To the contrary, and as the court of appeals observed, chapter 576 grants district courts power to control receivers and provides remedial options for parties wronged by a receiver. *See* Minn. Stat. § 576.23 (outlining the district court's "exclusive authority to direct the receiver" and its "authority over all receivership property"); Minn. Stat. § 576.37, subd. 1 (providing that a district court may remove a receiver for good cause); Minn. Stat. § 576.38, subd. 1 (allowing a district court to assess sanctions against a receiver).

---

complaint does not survive Williams's motion to dismiss even under the lenient *Hoskin* standard, we need not and do not resolve whether that standard governs motions to dismiss based on immunity.

And here, Seven availed itself of these remedies—albeit unsuccessfully—bringing motions to remove Williams from the receivership and to amend the receivership order in various ways. Relevant to this appeal, the district court considered and rejected Seven's argument that Williams should be removed as a receiver based on the allegation that Williams was not sufficiently independent from the parties, as required by chapter 576. *See* Minn. Stat. § 576.26, subd. 1(2) (requiring, among other things, that an order appointing a receiver include "written conclusions based in the record" that the receiver "is independent as to the parties and the underlying dispute"). The district court determined that lack of independence was not a reason to remove Williams, because Minnesota Statutes section 576.26, subdivision 3(b), provides that a "proposed receiver shall not be disqualified solely because" the receiver "has been engaged by any of the parties to the action in matters unrelated to the underlying action."[8] In other words, the district court heard and grappled with one of Seven's primary arguments in this case—that Williams was acting at the direction of the bank—and it rejected that argument.

Because Seven's complaint establishes that Williams's alleged actions were protected by quasi-judicial immunity, the court of appeals did not err when it determined that Williams was entitled to dismissal of Seven's claim for breach of fiduciary duty.

---

[8] There is no indication in the record that Seven appealed the district court's denial of its motion to remove the receiver. Neither the appealability of the district court's order nor its merits are before us.

20

## CONCLUSION

For the foregoing reasons, we affirm the decision of the court of appeals.

Affirmed.